FREDERICK D. HOLDEN, JR. (STATE BAR NO. 61526)
KAREN G. JOHNSON-MCKEWAN (STATE BAR NO. 121570)
JAMES N. KRAMER (STATE BAR NO. 154709)
JUSTIN M. LICHTERMAN (STATE BAR NO. 225734)
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    415-773-5700
Facsimile:    415-773-5759

Attorneys for Defendants-Petitioners
NVIDIA CORPORATION and
NVIDIA US INVESTMENT COMPANY

FILED
JUL 2 0 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CV 06-80195 MISC. JW

In re NVIDIA CORPORATION and NVIDIA US INVESTMENT COMPANY,

  Petitioners and Real Parties in Interest,

v.

UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION,

  Respondent

and

WILLIAM A. BRANDT, JR., Trustee,

  Real Party in Interest

Case No.

**PETITION FOR WRIT OF MANDAMUS REGARDING ORDER COMPELLING PRODUCTION OF PRIVILEGED DOCUMENTS (CRIME FRAUD)**

US_WEST:260058542.4

PETITION FOR WRIT OF MANDAMUS REGARDING ORDER COMPELLING PRODUCTION OF PRIVILEGED DOCUMENTS

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Rule 26.1, nVidia Corporation ("nVidia") and nVidia US Investment Company hereby make the following corporate disclosure statement:

nVidia is not owned by any parent corporation nor are there any corporations that own 10% or more of its stock.

nVidia US Investment Company is a wholly-owned subsidiary of nVidia Corporation.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .................................................................................. i
I. INTRODUCTION ................................................................................................................. 1
II. THIS COURT HAS JURISDICTION TO REVIEW THE CRIME FRAUD ORDER ................................................................................................................................. 3
III. STATEMENT OF ISSUES PRESENTED AND RELIEF SOUGHT ............................... 4
IV. FACTUAL AND PROCEDURAL HISTORY ................................................................... 5
    A. Background ................................................................................................................. 5
    B. The Bankruptcy Court Denies Carlyle's Motion to Compel Privileged Documents Based on the Crime Fraud Exception ..................................................... 6
    C. The Discovery Cut-Off and The Trustee's Motion to Compel ................................. 7
    D. The Court Erroneously Grants the Trustee's Motion As To the Purported "Secret Escrow" ......................................................................................................... 9
    E. The Bankruptcy Court Misapplied L.R. 26-2 ............................................................ 9
    F. The Bankruptcy Court Misapplied the Crime-Fraud Exception ............................ 12
V. WRIT RELIEF IS NECESSARY AND PROPER ........................................................... 14
    A. Balancing Test .......................................................................................................... 15
    B. No Adequate Means Exist At Law .......................................................................... 15
    C. nVidia Will Suffer Irreparable Harm ....................................................................... 15
    D. The Lower Court's Order is Legally Wrong ........................................................... 17
VI. APPELLATE REVIEW IS PROPER UNDER THE COLLATERAL ORDER DOCTRINE ......................................................................................................................... 17
VII. CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Admiral Ins. Co. v. District Court*,
 881 F.2d 1486, (9th Cir. 1988) .................................................................................... 4, 15

*Agster v. Maricopa County*,
 422 F.3d 836 (9th Cir.) .................................................................................................... 16

*Ayesh v. Fair Isaac Corp.*,
 No. C04-2980, 2005 WL 1562786 (N.D. Cal. June 29, 2005) ...................................... 10

*Bauman v. United Stated District Court*,
 557 F.2d 650 (9th Cir. 1977) ..................................................................................... 4, 15

*Bittaker v. Woodford*,
 331 F.3d 715 (9th Cir. 2003) ......................................................................................... 16

*BP Alaska Exploration, Inc. v. Superior Court*,
 199 Cal. App. 3d 1240 (1988) .................................................................................... 3, 13

*Cheney v. District Court*,
 542 U.S. 367 (2004) ......................................................................................................... 3

*City of Las Vegas v. Foley*,
 747 F.2d 1294 (9th Cir 1984) ................................................................................... 14, 15

*Cohen v. Beneficial Indus. Loan Corp.*,
 337 U.S. 541 (1949) ....................................................................................................... 17

*Export Group v. Reef Indus., Inc.*,
 54 F.3d 1466 (9th Cir. 1995) ......................................................................................... 10

*Goodworth Holding, Inc. v. Suh*,
 239 F. Supp. 2d 947 (N.D. Cal. 2002), *aff'd*, 99 Fed. Appx. 806 (9th Cir. 2004) .......... 10

*In re Allen*,
 896 F.2d 416 (9th Cir. 1990) ......................................................................................... 17

*In re Atencio*,
 913 F.2d 814 n.1 (10th Cir. 1990) ................................................................................... 3

*In re Boileau*,
 736 F.2d 502 (9th Cir. 1984) ......................................................................................... 16

*In re Canter*,
 299 F.3d 1150 (9th Cir. 2002) ................................................................................... 4, 15

*In re Ford Motor Co.*,
 110 F.3d, 954(3d Cir. 1997) .......................................................................................... 16

*In re Louisiana World Exposition, Inc.*,
 832 F.2d 1391 (5th Cir. 1987) ......................................................................................... 3

*In re Salter*,
 279 B.R. 278 (9th Cir. B.A.P. 2002) ............................................................................... 3

*In re Technical Knockout Graphics*,
 833 F.2d 797 (9th Cir. 1987) ......................................................................................... 15

*In re Teleport Oil Co.*,

## TABLE OF AUTHORITIES
(continued)

Page(s)

759 F.2d 1376 (9th Cir. 1985) .................................................................................... 4

*Laser Indus. Ltd. v. Reliant Tech., Inc.*,
   167 F.R.D. 417 (N.D. Cal. 1996) ................................................................ 3, 13, 14, 17

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ................................................................................ 13, 17

*Lingsch v. Savage*,
   213 Cal. App. 2d 729 (1963) ..................................................................................... 13

*Miller v. Gammie*,
   F.3D 889 (9TH Cir. 2003) ....................................................................................... 1,15

*OXY Resources California LLC v. Superior Court*,
   115 Cal. App. 4th 874 (2004) *quoting Korea Data Systems Co. v. Superior
   Court*, 51 Cal. App. 4th 1513, 1516 (1997) ............................................................... 16

*People ex rel. Lockyer v. Superior Court*,
   122 Cal. App. 4th 1060 (2004) .................................................................................. 17

*QST Energy, Inc. v. Mervyn's*,
   No. C-00-1699, 2001 WL 777489 (N.D. Cal. May 14, 2001) .................................. 10

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
   599 F.2d 707 (5th Cir. 1979) ..................................................................................... 17

*Sell v. United States*,
   539 U.S. 166 (2003) .................................................................................................... 4

*Special Investments, Inc. v. Aero Air, Inc.*,
   360 F.2d 989 (9th Cir. 2004) ..................................................................................... 15

*United States v. Gonzales*,
   520 U.S. 1 (1997) ...................................................................................................... 10

### STATUTES

28 U.S.C.

   § 158 ..................................................................................................................... 1, 15

   § 1292 ........................................................................................................................... 1

   § 1651(a) ...................................................................................................................... 3

California Corporations Code
   1900(a) ......................................................................................................................... 5

Moore's Federal Practice Civil
   § 204.05 ........................................................................................................................ 3

# TABLE OF AUTHORITIES
## (continued)

Page(s)

### RULES

Federal Rules of Evidence
  201 ............................................................................................................... 7
Federal Rules of Appellate Procedure
  21 ............................................................................................................... 3
Northern District Local Rule
  16-4 ........................................................................................................... 3
  26-2 ........................................................................................................... 3

nVidia Corporation ("nVidia") asks this Court to grant this application for writ of mandamus to reverse an order of the bankruptcy court entered on June 7, 2006 entitled Order re Motion to Compel Production of Documents ("Crime Fraud Order") (attached as Exhibit K to the Appendix, filed contemporaneously herewith) for the reasons set forth below.[1]

## I. INTRODUCTION

By its Crime-Fraud Order, the bankruptcy court granted in part a motion to compel the production of privileged documents brought by the bankruptcy Trustee of 3dfx Interactive, Inc. ("3dfx"). That extraordinary order would pierce the attorney-client privilege between nVidia and its counsel notwithstanding the bankruptcy court's (a) misapplication of the crime-fraud theory, (b) prior order denying a motion to compel discovery on the same subject and the same evidence in the Fall of 2003, and (c) failure properly to consider and apply the relevant procedural and substantive authorities. Because an order compelling the disclosure of attorney-client communications is an extraordinary event with irreversible and grave consequences, and because the order in this case is plagued by manifold factual, legal and logical flaws, extraordinary relief is necessary here. nVidia therefore asks the District Court to review that portion of the Crime Fraud Order that requires nVidia to disclose attorney client communications.

The Crime Fraud Order is defective for at least three reasons. ***First,*** it finds a non-existent "good cause" exception in Northern District Civil Local Rule 26-2 ("L.R. 26-2"), and entertains a motion that is, on its face, barred by the operation of that rule. (The Trustee's motion was filed more than a year too late.) In justifying its exception to the time bar contained in Local Rule 26-2, the bankruptcy court cites the wrong discovery cut-off, and excuses the Trustee's failure to meet the deadline by reference to events that occurred long *after* the deadline had already expired.

Written discovery in the Trustee's action closed pursuant to a court order on July 30,

---

[1] nVidia filed this petition with reasonable promptness. The Crime-Fraud Order was entered on June 7, 2006. nVidia timely filed a Notice of Appeal and Motion for Leave to Appeal on June 20, 2006. The Court has not yet adjudicated the Motion for Leave to Appeal. However, on July 17, 2006, the United States District Court, Judge Ware presiding, denied a different Motion for Leave to Appeal the question of a party's standing to bring a related lawsuit, filed by nVidia in a related case, on the grounds of lack of jurisdiction under 28 U.S.C. sections 158 and 1292. Although the Court may treat an appeal from a non-appealable order as a petition for writ of mandamus (*Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003)), nVidia files this writ of mandamus out of deference to the jurisdictional analysis in the Court's July 17, 2006 Order. nVidia intends to withdraw its Motion for Leave to Appeal the Crime-Fraud Order once the petition for writ of mandamus is accepted.

2004, and operation of L.R. 26-2 required the Trustee to bring a motion to compel further written discovery – including documents – by no later than August 10, 2004. The Trustee had engaged in a meet-and-confer process in July, 2004 (however desultory it may have been), but decided to file his motion to compel production of documents against nVidia **more than a year later**, on August 11, 2005. Though the motion was plainly untimely under L.R. 26-2, the bankruptcy court justified its decision not to apply L.R. 26-2 based on a clearly erroneous application of the case law interpreting that rule. No published opinion has ever permitted a party to obtain discovery after the expiration of the deadline, but the bankruptcy court inferred a "good cause" exception from a single offhand phrase it found in an opinion in which the District Court actually denied the movant's request for late discovery as *untimely*. From there, the bankruptcy court conjured "good cause" from the parties' agreement in this case – nearly two months *after* the L.R. 26-2 deadline had already expired – to stay *further* litigation pending mediation. Though it should be needless to say, the parties never agreed, either expressly or implicitly, retroactively to revive previously expired discovery deadlines.

*Second,* notwithstanding nVidia's reminders, the bankruptcy court appears to have forgotten that it denied the very same crime-fraud motion in November, 2003, filed against nVidia by another party with whose litigation the Trustee's action against nVidia was consolidated for pretrial purposes, and with whom the Trustee shares a Joint Litigation Agreement. The earlier motion was based on an email dated April 24, 2001 between nVidia's in-house and outside lawyers that had been forwarded to 3dfx. In November of 2003, the bankruptcy court was unequivocal that the email was insufficient to establish the crime-fraud exception. In June of 2006, however, the bankruptcy court found the crime-fraud exception ***did*** apply on the basis of exactly that same email, and nothing more. The Crime Fraud Order makes no attempt to reconcile the two conflicting decisions.

*Third*, even assuming the bankruptcy court intended to reconsider its earlier denial of the same motion (an intention that is nowhere discernable from the face of the Crime Fraud Order), the Order misapplies the crime-fraud exception by failing to consider the evidence and argument that nVidia offered, though the relevant case law clearly mandates it.

Under applicable California law, the Trustee bore the burden of proving the existence of the crime or fraud by making a *prima facie* showing that nVidia retained its attorneys to enable or to aid in the commission of a crime or fraud. *See BP Alaska Exploration, Inc. v. Superior Court*, 199 Cal. App. 3d 1240, 1262 (1988). Moreover, the bankruptcy court was required to consider evidence and argument from nVidia rebutting the Trustee's contention before deciding whether the Trustee had made a *prima facie* case. *See Laser Indus. Ltd. v. Reliant Tech., Inc.*, 167 F.R.D. 417, 429-30 (N.D. Cal. 1996). The Trustee moved to compel three categories of documents. In denying the Trustee's motion as to two of the categories, the bankruptcy court properly applied these principles.[2] With respect to the third category – nVidia's payment of funds into an escrow account set aside to satisfy creditors who had obtained writs of attachment – the bankruptcy court considered none of the evidence nVidia proffered before erroneously concluding that the Trustee had established a *prima facie* case of fraud. The bankruptcy court reached that conclusion notwithstanding the fact that the Trustee offered **no evidence** that nVidia made any false statement in connection with the escrow, or that any party justifiably relied on anything nVidia said or did. As a matter of law, the Trustee therefore could not establish a *prima facie* case of fraud. *BP Alaska*, 199 Cal. App. 3d at 1263 (a *prima facie* case requires a party to "prove a false representation a material fact, knowledge of its falsity, intent to deceive and the right to rely.").

## II.   THIS COURT HAS JURISDICTION TO REVIEW THE CRIME FRAUD ORDER.

The All Writs Act states that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *Cheney v. District Court*, 542 U.S. 367, 380 (2004). The All Writs Act applies to United Stated District Courts, which are established by Congress, when they act in their appellate capacity. *See* Moore's Federal Practice Civil § 204.05. *See also In re Salter*, 279 B.R. 278, 281-82 (9th Cir. B.A.P. 2002) (recognizing authority of Bankruptcy Appellate Panel to issue writs); Fed. R. App. Proc. 21 (applicable in this Court pursuant to Northern District Local Rule 16-4).[3] Nonappealable orders of a bankruptcy

---

[2] This application for a writ of mandamus does not reach those two categories.
[3] *See also In re Atencio*, 913 F.2d 814, 816 n.1 (10th Cir. 1990) (recognizing district court's power to issue writ of mandamus to bankruptcy court); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987) (same).

court therefore may be reviewed by mandamus if the petitioner is threatened with irreparable harm that cannot be protected against by any other means. *See In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002); *In re Teleport Oil Co.*, 759 F.2d 1376, 1378 (9th Cir. 1985).

The Ninth Circuit has long recognized "the propriety of using mandamus for the review of orders compelling discovery in the face of assertions of absolute privilege." *See Admiral Ins. Co. v. District Court*, 881 F.2d 1486, (9th Cir. 1988) (citing *Heathman v. District Court*, 503 F.2d 1032 (9th Cir. 1974) and cases from other Circuits). Here, the Crime-Fraud Order purports to compel discovery in the face of the attorney-client privilege. The Crime-Fraud Order, if enforced, will pierce substantive privilege rights afforded nVidia under controlling California law. Mandamus review therefore is necessary and proper under the circumstances. Moreover, the Crime-Fraud Order is properly subject to writ relief under the collateral order doctrine. *See Sell v. United States*, 539 U.S. 166, 176 (2003).

As explained in detail below, writ relief is proper here because each factor articulated in *Bauman v. United Stated District Court*, 557 F.2d 650 (9th Cir. 1977) weighs in favor of nVidia. Accordingly, the Court should issue a writ of mandamus requiring the bankruptcy court to reverse the Crime-Fraud Order to the extent it invades nVidia's protected privilege.

### III. STATEMENT OF ISSUES PRESENTED AND RELIEF SOUGHT

1. Did the bankruptcy court err as a matter of law in refusing to hold that the Trustee's Motion to Compel Production of Documents (Crime Fraud) was barred pursuant to Northern District Civil Local Rule 26-2?

***Relief Sought: Entry of an Order reversing the bankruptcy court's Order granting the Trustee's Motion to Compel Production of Documents (Crime Fraud).***

2. Did the bankruptcy court err as a matter of law in finding that the crime-fraud exception to the attorney-client privilege applied to nVidia's communications with legal counsel?

***Relief Sought: Entry of an Order reversing the bankruptcy court's Order granting the Trustee's Motion to Compel Production of Documents (Crime Fraud).***

## IV. FACTUAL AND PROCEDURAL HISTORY

### A. BACKGROUND

On December 15, 2000, nVidia and 3dfx entered into an Asset Purchase Agreement ("APA") pursuant to which nVidia agreed to purchase certain assets from 3dfx in exchange for $70 million in cash. In addition, 3dfx announced that it would dissolve in accordance with a formal Plan of Dissolution pursuant to which it intended to satisfy all of its creditors and thereafter to dissolve in accordance with California Corporations Code section 1900(a). For successfully completing that dissolution process in an orderly manner, nVidia agreed that it would pay 3dfx additional consideration in the form of one million shares of nVidia stock. To assure that 3dfx could accomplish that objective, nVidia agreed to monetize up to half of the Stock Consideration for an agreed-upon maximum amount of $25 million, but only if 3dfx certified that doing so would retire all of 3dfx's debts and permit completion of the Plan of Dissolution.

Ultimately, 3dfx was not able to complete an orderly dissolution. Instead, it found itself bogged down in lawsuits launched initially by its landlords (CarrAmerica Real Estate ("CarrAmerica") and Carlyle Fortran Trust ("Carlyle")) against both 3dfx and nVidia (both of which lawsuits are now pending in the District Court). On July 18, 2002, 3dfx filed a Petition for Voluntary Winding Up and Dissolution in Santa Clara Superior Court in hopes of satisfying the conditions of the APA for the additional consideration to pay its creditors and effecting an orderly dissolution. Carlyle opposed that dissolution and the State Court denied 3dfx's Petition.

3dfx thereafter filed for relief in bankruptcy on October 15, 2002. The pending landlord actions were removed to the Bankruptcy Court shortly thereafter. On January 23, 2003, the Bankruptcy Court appointed a Chapter 11 Trustee, who filed a lawsuit against nVidia. The landlord and Trustee lawsuits all allege that the APA was a fraudulent transfer and that the transaction was a *de facto* merger between 3dfx and nVidia. The bankruptcy court consolidated the three actions for pretrial purposes from their inception.[4]

---

[4] The three cases remained consolidated until the Carlyle and CarrAmerica cases were withdrawn to the District Court in 2005.

US_WEST:260058542.4 — - 5 - — PETITION FOR WRIT OF MANDAMUS REGARDING ORDER COMPELLING PRODUCTION OF PRIVILEGED DOCUMENTS

### B. THE BANKRUPTCY COURT DENIES CARLYLE'S MOTION TO COMPEL PRIVILEGED DOCUMENTS BASED ON THE CRIME FRAUD EXCEPTION

Recognizing the substantial overlap among their cases, the landlords and the Trustee entered into a Joint Litigation Agreement for their respective lawsuits against nVidia. Initially, Carlyle took the lead on discovery and engaged in aggressive motion practice on behalf of the three cooperating plaintiffs. On May 2, 2003, Carlyle filed a Motion for Order Issuing Terminating Sanctions or Other Appropriate Sanctions against nVidia, in which it argued (on its own behalf and for its Joint Litigation Agreement participants) that nVidia's attorney-client privilege should be pierced on the basis of the crime-fraud exception. *See* Appendix, Ex. A.

Carlyle's motion bears some examination not only because of its similarity to the Trustee's motion at issue here, but also because of the inexplicably different outcomes achieved in the two motions.

Carlyle's motion asked the bankruptcy court in the fall of 2003 to apply the crime-fraud exception to nVidia's communications with its attorneys. The motion was based upon an April 24, 2001 email from Stephen Pettigrew, an nVidia in-house attorney, to Richard Heddleson, 3dfx's Chief Financial Officer, forwarding an email from nVidia's outside counsel concerning an escrow account established at the time of closing the APA. The purpose of the escrow was to assure the availability of funds to pay certain of 3dfx's creditors that had obtained writs of attachment against 3dfx. 3dfx disputed the amounts claimed by those creditors, and hoped to settle the disputed claims through negotiation. As part of that effort, 3dfx asked nVidia to remain silent about the existence of the escrow, and nVidia's counsel wrote, "I recognize that nVidia is trying to assist 3dfx's negotiations with these creditors by not revealing the existence of the escrow," expressed some reservations about that course, and concluded by agreeing not to mention the escrow until allowed to do so, *or* called upon to do so in judicial enforcement proceedings on any of the writs of attachment. *See* Appendix Ex. A at 18.[5]

At the hearing on Carlyle's motion, the bankruptcy court articulated the applicable law,

---

[5] Carlyle also contended that the entire structure of the APA was a fraud on creditors and sought application of the crime-fraud exception to all of nVidia's attorney client communications on that basis.

US_WEST:260058542.4 - 6 - PETITION FOR WRIT OF MANDAMUS REGARDING ORDER COMPELLING PRODUCTION OF PRIVILEGED DOCUMENTS

then ruled on the motion:

> [W]hen we look at what can be shown at this point, I don't think you can establish a *prima facie* case of fraud. And I'm not saying you won't be able to do that six months from now. I have no idea whatsoever, but at this point I don't think you can establish a *prima facie* case of fraud. And therefore I don't think you can use the crime-fraud exception at this juncture to get around the privilege.

Appendix, Ex. D at 18.

### C.   THE DISCOVERY CUT-OFF AND THE TRUSTEE'S MOTION TO COMPEL

On May 28, 2004, the bankruptcy court entered an order setting three separate deadlines for fact and expert discovery in all three cases. *See* Appendix, Ex. G (KJM Decl. Ex. P).[6] Pursuant to that order, the deadlines were as follows:

- Written fact discovery cut-off: July 30, 2004.
- Deposition cut-off: August 20, 2004.
- Expert discovery cut-off: October 15, 2004.

At a deposition on June 11, 2004, approximately six weeks before the written discovery cut-off, counsel for the Trustee raised with nVidia's counsel the idea that the Trustee had a crime-fraud "issue" in the case. In response, nVidia asked for a letter articulating the basis for the Trustee's position. Three weeks later, on July 2, 2004 – still well before the July 30 cut-off – the Trustee sent a letter demanding production of privileged documents, but citing the wrong substantive law. *See* Appendix, Ex. G (KJM Decl., Ex. Q). nVidia responded on July 13, 2004, and heard nothing further from the Trustee on the subject before the July 30, 2004 written discovery cut off. *See* Appendix, Ex G (KJM Decl., Ex. R).

As permitted by the bankruptcy court's May 28, 2004 order, the parties continued with depositions until August 20, 2004, and then agreed to extend depositions beyond the August 20, 2004 cut-off because of scheduling issues when a witness was injured in a bicycle accident. The parties completed depositions on October 1, 2004, and exchanged expert reports on October 8,

---

[6] Exhibit G to the Appendix is the Declaration of Karen Johnson-McKewan in Support of nVidia Defendants' Opposition to Trustee's Motion to Compel Production of Documents (Crime-Fraud), filed on or about August 25, 2005 in response to the Trustee's underlying motion. The document is judicially noticeable as a court record that was used by the bankruptcy court in deciding the underlying motion. Fed. R. Evid. 201. It is referred to herein as "KJM Decl.", with references to the original exhibits filed with the bankruptcy court.